UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSHUA T.,

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:20-cv-01148-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on June 26, 2020, denied Plaintiff's applications for disability insurance benefits and for supplemental security income. Plaintiff has now moved for judgment on the pleadings (Doc. 14), and the Commissioner has filed a similar motion (Doc. 15). For the following reasons, the Court will **DENY** Plaintiff's motion, **GRANT** Defendant's motion, and direct the Clerk to enter judgment in favor of the Defendant Commissioner.

### I. BACKGROUND

    On June 14, 2017, Plaintiff protectively filed his applications for benefits, alleging that he became disabled on November 27, 2016. After initial administrative denials of his claim, Plaintiff appeared at an administrative hearing held on June 3, 2019. Both Plaintiff and a vocational expert, Mitchell A. Schmidt, testified at that hearing.

    The Administrative Law Judge issued an unfavorable decision on June 13, 2019. In that decision, the ALJ first concluded that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020. Next, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. He then found that Plaintiff suffered from severe impairments including lumbar compression fracture/degenerative disc disease, right calcaneal fracture status post open reduction and internal fixation/degenerative joint disease, and migraines. He further determined that these impairments, viewed singly or in combination, were not of the severity necessary to qualify for disability under the Listing of Impairments.

    Moving on to the next step of the inquiry, the ALJ found that Plaintiff had the residual functional capacity to perform a reduced range of light work. He could stand and/or walk for four hours in a workday and could frequently push, pull, and/or operate foot controls with the

right lower extremity. Also, he could frequently stoop, kneel, crouch, crawl, and occasionally climb stairs, ramps, ladders, ropes, and scaffolds. He could also occasionally be exposed to unprotected heights and moving machinery parts. Lastly, he need to work in a moderate noise environment.

The ALJ next determined that Plaintiff could not do his past relevant work as a fast food worker, electrician helper, and cable television installer. According to the testimony of the vocational expert, a person with Plaintiff's residual functional capacity could perform jobs like garment sorter, fruit cutter, addresser, and nut sorter. The ALJ therefore concluded that Plaintiff was not under a disability as defined in the Social Security Act and was not entitled to benefits.

Plaintiff, in his motion for judgment, raises three issues. He contends (1) that the ALJ failed to reconcile a conflict between the opinion of Dr. Dave, a consultative examiner, and the ultimate determination of Plaintiff's residual functional capacity; (2) that the ALJ improperly evaluated Plaintiff's need for an assistive device; and (3) that the ALJ's credibility determination was not supported by substantial evidence.

## II.  THE KEY EVIDENCE

The Court will begin its review of the evidence by summarizing the testimony from the administrative hearing. It will then provide a summary of the most important medical records.

Plaintiff, who was 32 years old when he filed his applications, first testified that he had graduated from high school and had worked for several years at a McDonald's as a grill leader and crew trainer. After that, he did basic electrical work on commercial properties. He then worked installing cable, phone, and internet services at residences. He had not worked since November 27, 2016.

When asked about a fall that occurred at his home at about that time, Plaintiff said that he broke his ankle and that it had not improved despite surgery. His pain had increased as had the amount of pain medication prescribed for him. The pain was mostly in his ankle and included throbbing, burning, and pounding, all on a constant basis. It affected his ability to walk, limiting him to five minutes of weight-bearing. Sitting for 30 to 45 minutes caused him to experience back pain. He could climb stairs slowly and could walk around a store leaning on a cart, but not for more than 15 minutes. He no longer fished or hiked, activities he used to enjoy, and his driving was limited to 15 to 20 minutes. He also had migraines three to five times per month.

Plaintiff testified that, on a daily basis, he watched his 16-month-old daughter, but did not feel comfortable going outside with her. He was able to help with the laundry and the cooking. He could not climb a ladder any more and was also having trouble kneeling.

The vocational expert, Michael Schmidt, was first asked to describe and categorize Plaintiff's past work. He said that the job of fast food cook was medium and skilled; the job of

electrician's helper was medium and semi-skilled; and the job of cable television installer was heavy and skilled.  None of those jobs could be done by someone who could do only a limited range of light work, however.  Next, the expert testified that a person with Plaintiff's vocational profile and who was limited to light work with various restrictions relating to standing, walking, pushing, pulling operating foot controls, stooping, crouching, crawling, and climbing, and who had environmental restrictions as well, could do both light and sedentary jobs.  Examples included garment sorter and fruit cutter, both light jobs, and addresser and nut sorter, both sedentary jobs.  If that person were off task more than 15% of the time, however, or would miss four or more days of work per month, he or she could not be employed.  Finally, he testified that those jobs probably involved changing positions every thirty minutes and that the worker would be required to maintain pace, persistence, or concentration at a rate of 85% or better.

The relevant medical records can be summarized as follows.  Plaintiff was seen by various providers after falling off a ladder in November, 2016.  Studies showed that he fractured his ankle and his L2 vertebra and that he had small disc protrusions at L2-3 and L3-4.  He underwent surgery on his ankle in December, 2016 which involved the implantation of hardware.  Subsequently, he was treated with pain medication.

Dr. Dave performed an internal medicine examination on a consultative basis on August 31, 2017.  At that time, Plaintiff was reporting constant pain in his foot radiating to the heel as well as intermittent right ankle pain.  Prolonged standing and walking made his pain worse.  He had been fully weight-bearing for a few months.  He also had low back pain on a constant basis, made worse by bending or reaching.  On examination, Plaintiff's gait was slightly decreased and he was unable to toe gait.  There were significant limitations in the range of motion of his right ankle.  He had been using a cane both indoors and outdoors.  He exhibited pain on forward flexion of the lumbar spine and had limitations in the range of motion of that joint as well.  There was some mild atrophy of the right leg and calf.  Dr. Dave believed that Plaintiff's prognosis was fair and that he had marked to moderate limitations for prolonged standing, walking, climbing, and squatting due to right heel pain as well as moderate limitations in repetitive bending forward, lifting, carrying, pushing, and pulling due to his back problems. (Tr. 280-84).

Plaintiff was referred to Dr. Fahrbach for a neurological consultation in September, 2017.  Plaintiff reported that his back pain was getting worse and he had not been able to do physical therapy for it.  Examination showed that he had an antalgic gait and exhibited tenderness to touch on his right foot.  He was still using a cane.  Dr. Fahrbach did not think Plaintiff would benefit from back surgery.

Additional treatment notes show that by February of 2018, Plaintiff's foot pain was improved due to medication and injections.  By August of that year, however, he reported dissatisfaction with his pain management treatment, but he was walking with a normal gait.  Apparently his dissatisfaction arose from the fact that he had taken some opiates not prescribed for him, and the pain management center then refused to prescribe more opiates.  A new provider, Louis Pawlowski, DNP, prescribed both Lyrica and methadone as well as Celebrex,

and notes from later in 2018 and early in 2019 indicate that this new medication regime appeared to help. Plaintiff reported that activity such as running and walking increased his pain, however. Those notes also show that he was having a migraine headache once per month and had full range of motion.

Plaintiff continued to seek treatment for his right foot pain from Erie County Medical Center. A note from November 26, 2018 indicates that Plaintiff's pain had not improved and that he was getting left foot pain as well. He was still using a cane "for comfort." The signer of the note, Karen Taylor, PA, concluded that Plaintiff was able to return to "light duty" work. (Tr. 348).

Some additional notes were submitted after the ALJ's decision. They show that Plaintiff was requesting additional pain medication and that he was having difficulty managing his pain throughout the day. His activity level was described as low.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

### A.  The Consultative Examiner's Report

After first summarizing the findings and conclusions reached by Dr. Dave when she conducted her consultative examination, Plaintiff notes that the ALJ found her opinions to be convincing and persuasive due to consistency with the examination findings and those from other medical providers.  As noted above, the ALJ also found that Plaintiff could do a limited range of light work involving at least four hours of standing and walking during the day.  Plaintiff argues that there is an inconsistency between this finding and Dr. Dave's opinion that Plaintiff was moderately to markedly limited in his ability to tolerate prolonged standing and walking, and he asserts that the ALJ did not explain how he resolved this inconsistency.  Further, even though the jobs identified by the vocational expert allowed for a change in position every 30 minutes, he notes that there is nothing to suggest that the prolonged standing or walking referred to by Dr. Dave described a period of time at least 30 minutes long.  He makes a similar argument concerning the ALJ's findings about Plaintiff's ability to push, pull, stoop, kneel, crouch, crawl, and climb, again contending that these were not necessarily consistent with the moderate to marked limitations found in Dr. Dave's report.

The Commissioner raises several points in response.  He argues, first, that even if the ALJ erred in finding that Plaintiff could do the light jobs identified by the vocational expert, he would still not be found to be disabled because the vocational expert also concluded that Plaintiff could perform several sedentary jobs.  Next, the Commissioner notes that Dr. Dave's was not the only opinion relied on by the ALJ and that it was reasonable, in light of the examination findings and the opinion from PA Taylor, to conclude that Plaintiff could also do light work with restrictions.  Finally, he contends that there is not an actual inconsistency between Dr. Dave's findings and the ALJ's residual functional capacity finding because someone with moderate to marked limitations in standing and walking can do the restricted range of work described by the ALJ.

All of the points raised by Plaintiff deal with the ALJ's finding that Plaintiff could do a limited range of light work.  Whether or not the Commissioner is correct that the ALJ could reasonably have found Plaintiff to have that ability, as the Commissioner notes, the ALJ also found that Plaintiff could perform various sedentary jobs.  According to the vocational expert, 110,000 such positions existed in the national economy.  Given this evidence, the Court finds that Plaintiff's first claim of error does not support a remand for further proceedings.  *Cf. Bellamy v. Apfel*, 110 F.Supp.2d 81 (D. Conn. 2000)(when alternative bases for finding a claimant not disabled exist, error with regard to one of those bases is harmless).

### B.  Use of a Cane

As his second claim of error, Plaintiff argues that although Ms. Taylor had commented that Plaintiff was able to walk unassisted and was using a cane for his comfort - a statement upon

which the ALJ relied in finding that use of a cane was not medically necessary - there was also other evidence in the record showing that Plaintiff needed a cane, and the ALJ improperly ignored that evidence. In response, the Commissioner asserts that the evidence, taken as a whole, does not show that Plaintiff needed to walk with a cane and does not satisfy the criteria set out in Social Security Ruling 96-9p. The Commissioner also notes, again, that two of the jobs identified by the vocational expert were performed at the sedentary exertional level, suggesting that the need for a cane is not particularly pertinent to the question of whether Plaintiff could do those jobs.

SSR 96-9p states, in relevant part, the following:

**Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

Plaintiff is correct that the sole reference made by the ALJ to use of a cane is this statement: "Moreover, Karen Taylor, NP (sic) noted in November 2018 walked unassisted by a cane, which the claimant uses only for comfort." (Tr. 33). The record does contain other reference to Plaintiff's use of a cane. For example, Dr. Dave noted that Plaintiff used a cane indoors and outdoors and that he believed it had been prescribed for him by Dr. Ritter (although he was also described as fully weightbearing). Dr. Dave did not include the use of cane in her evaluation of his functional capacity, however. Dr. Fahrbach also reported that Plaintiff had been using a cane for his right foot pain (Tr. 294), and an examination noted from May, 2018, stated that Plaintiff was using a cane for stability and walked with an antalgic gait and station. (Tr. 314). There are additional notes concerning Plaintiff's ability to walk, however. When seen by Adult Medical Services in June, 2017, six months after his ankle surgery, Plaintiff was walking with a limp (Tr. 271), and when seen by the same provider in August of 2018, he walked with a normal gait. (Tr. 312). Neither these notes nor any of the other treatment notes make any reference to either Plaintiff's use of a cane or his need for one.

This Court, interpreting SSR 96-9p, has said that "'[a] cane need not be prescribed to be considered medically necessary, but there must be specific medical documentation establishing the need for it and the circumstances surrounding that need. Plaintiff has the burden to establish such medical necessity.'" *Ellis v. Comm'r of Soc. Sec.*, 2020 WL 2744118, at *6 (W.D.N.Y. May 27, 2020), *quoting Shepard v. Comm'r of Soc. Sec.*, 2017 WL 5508377, at *11 (N.D.N.Y. Nov. 15, 2017). Here, the Court agrees with the Commissioner that the record falls short of

demonstrating that Plaintiff's use of a cane was medically necessary. There is no evidence that any medical provider prescribed it. All of the references to Plaintiff's use of a cane lack any specificity about why it was needed or for what types of activities it was required, such as prolonged walking or standing. Dr. Dave's consultative examination, while noting that Plaintiff used a cane, did not include any restrictions on his functional activities usually associated with the use of a cane. To the extent that his use of a cane factored into Dr. Dave's conclusions about limitations in prolonged walking and standing, the Commissioner took those limitations into account in finding that there were sedentary jobs which Plaintiff could perform. PA Taylor's restriction of Plaintiff to light duty also can be interpreted to mean that at such an exertional level, Plaintiff would not need a cane. Overall, the ALJ reasonably construed the record on this issue and complied with the applicable Ruling. Consequently, there is no reason to order a remand for further consideration of Plaintiff's need for a cane.

### C. Evaluation of Plaintiff's Testimony

Plaintiff's final argument is that the ALJ did not properly evaluate his testimony. According to Plaintiff, the ALJ mischaracterized Plaintiff's description of his activities of daily living, "paint[ing] an inaccurate picture of Plaintiff's functioning" which provided no support for the finding that Plaintiff was not fully credible. Plaintiff's Memorandum, Doc. 14, at 27. Plaintiff also argues that his daily activities did not indicate that he could perform the exertional demands of light work. The Commissioner replies that the ALJ properly applied the appropriate regulatory factors in evaluating Plaintiff's credibility, including the information about treatment and daily activities, and also was entitled to consider inconsistencies in the record, including the various statements Plaintiff made about the frequency of his migraines. The Commissioner also stresses the fact that on this issue, the Court is required to give substantial deference to the ALJ's findings.

Under SSR 16-3p, there are seven relevant factors which may bear on the issue of a claimant's credibility. They are (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. As this Court stated in *Wynn v. Comm'r of Social Security*, 342 F. Supp. 3d 340, 350 (W.D.N.Y. 2018):

> The ALJ, who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations." *Whiting v. Astrue*, No. CIV.A. 1:12-274, 2013 WL 427171, at *6, 2013 U.S. Dist. LEXIS 15109, at *22 (N.D.N.Y. Jan. 15,

2013), *adopted*, 2013 WL 427166, 2013 U.S. Dist. LEXIS 14944 (N.D.N.Y. Feb. 4, 2013). As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Perez v. Barnhart,* 440 F.Supp.2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).

In this case, the ALJ explained his finding as follows. After reciting the correct legal standard (Tr. 30), he concluded that there were some inconsistencies between Plaintiff's statements concerning his symptoms and the medical and other evidence in the record. *Id.* The ALJ summarized the medical records, made his residual functional capacity finding, and then noted that Plaintiff was able to care for his 16-month-old daughter and to drive a car. He reviewed the opinions of Dr. Dave and Ms.Taylor and found their findings, supportive of Plaintiff's ability to do a limited range of light work, persuasive, noting, again, the inconsistencies between their findings and conclusions and the symptoms and restrictions endorsed by Plaintiff. (Tr. 33).

The ALJ's finding on this issue is reasonably supported by the record. Contrary to Plaintiff's contention, the ALJ did not equate Plaintiff's activities of daily living to light work activities, but simply considered them, among other factors, in making his ultimate determination. He also correctly cited to the medical evidence and determined that there were inconsistencies between Plaintiff's description of totally disabling symptoms and the conclusions reached by various examiners, as well as the objective medical evidence and treatment record. The conclusions he reached are not patently unreasonable on this record. Consequently, mindful of the deference owed to the credibility findings of an ALJ, and in light of the fact that no legal error was committed in the course of the ALJ's analysis, the Court is required to affirm the ALJ's decision on this issue as well.

## V.  CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 14), **GRANT**S Defendant's motion (Doc. 15), and directs the Clerk to enter judgment in favor of the Defendant Commissioner.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**